1
2
3
4              UNITED STATES DISTRICT COURT
5             NORTHERN DISTRICT OF CALIFORNIA
6
7
8
9 UNITED STATES OF AMERICA,
   ex rel. UNITE HERE,
10
          Plaintiff,                       No. C 06-2413 PJH
11
      v.                              **ORDER RE MOTIONS TO DISMISS**
12
CINTAS CORPORATION,
13
          Defendant.
14 _____/

15       Defendant's motion to dismiss the complaint for failure to state a claim and motion to

16 dismiss for lack of subject matter jurisdiction came on for hearing before this court on

17 December 12, 2007. Plaintiff/relator appeared by its counsel Peter D. Nussbaum and

18 Peder J. Thoreen, and defendant appeared by its counsel Mark C. Dosker and Gergory M.

19 Utter. Having read the parties' papers and carefully considered their arguments and the

20 relevant legal authority, and good cause appearing, the court hereby GRANTS the motion

21 to dismiss for failure to state a claim and DENIES the motion to dismiss for lack of subject

22 matter jurisdiction.

23                          **INTRODUCTION**

24       This is a qui tam action alleging violations of the False Claims Act, 31 U.S.C.

25 § 3729, et seq. ("FCA"). Plaintiff/relator UNITE HERE alleges that defendant Cintas

26 Corporation ("Cintas") defrauded the United States by obtaining numerous service

27 contracts with the U.S. government under the pretense that Cintas would comply with the

28 requirements of the Service Contract Act of 1965 ("SCA"), 41 U.S.C. §§ 351, et seq., and

then falsely certifying that it had complied with those requirements.

UNITE HERE filed the original complaint under seal on April 4, 2006, and filed the first amended complaint ("FAC") on June 18, 2007. The FAC alleges two causes of action under the FCA – one under § 3729(a)(1) (presenting false claims for payment or approval), and one under § 3729(a)(2) (knowingly making or using a false record or statement for purposes of obtaining payment by the government on a false or fraudulent claim).

On July 16, 2007, the United States advised the court of its intention to decline intervention, and the case was unsealed on that date. UNITE HERE served Cintas with the summons and complaint on September 13, 2007. Cintas now seeks an order dismissing the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

**BACKGROUND**

A.    The False Claims Act

Under the False Claims Act, any person who defrauds the United States Government is liable for civil penalties. United States ex rel. Biddle v. Bd of Trustees of Leland Stanford, Jr. University, 161 F.3d 533, 535 (9th Cir. 1998). The FCA provides for liability for any person who, among other things, "knowingly presents . . . a false or fraudulent claim for payment" to the United States government; "knowingly makes [or] uses . . . a false record or statement" to obtain payment of a false or fraudulent claim by the government; conspires to defraud the government by getting a false or fraudulent claim allowed or paid; or has possession of government property and wilfully delivers less property than the amount for which the person receives a receipt. 31 U.S.C. § 3729(a).

Although the FCA requires the Attorney General to investigate possible violations, id. § 3730(a), civil actions under the FCA may be brought either by the United States or as a qui tam action by a private person. See id. § 3730(a), (b). In a qui tam action, the private person – the "relator" – sues on behalf of the government as well as himself. Id. § 3730(b)(1). The action must be brought in the name of the government. Id. The

2

government may elect to intervene or may decline to intervene.  Id. § 3730(b)(2), (4).  If the government declines to intervene, the relator has the right to conduct the action.  Id. § 3730(b)(4), (c)(3).  If the relator prevails, he receives a percentage of the recovery, with the remainder being paid to the government.  Biddle, 161 F.3d at 535.

In the typical qui tam FCA action, such as where a private company overcharges the United States under a government contract, the claim for payment is literally false or fraudulent.  United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996).  However, Congress has emphasized that the FCA should be broadly construed "to reach all types of fraud . . . that might result in financial loss to the [g]overnment."  United States v. Neifert-White Co., 390 U.S. 228, 232 (1968); see also United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1170 (9th Cir. 2006), cert. denied, 127 S.Ct. 2099 (2007).

Thus, courts have ruled that the FCA does not limit liability to facially false or fraudulent claims for payment.  Rather, the "broad construction of a 'false or fraudulent claim' [has] given rise to two doctrines that attach potential [FCA] liability to claims for payment that are not explicitly and/or independently false: (1) false certification (either express or implied); and (2) promissory fraud."  Hendow, 461 F.3d at 1171.

A claim under the FCA can be false "where a party merely certifies compliance with a statute or regulation as a condition to government payment."  Id.  The two major considerations in such a case are whether the false statement is the cause of the government's providing the benefit, and whether any relation exists between the subject matter of the false statement and the event triggering the government's loss.  Id.  Mere regulatory or statutory violations do not give rise to an FCA action – rather, it is the false certification of compliance that creates liability when certification is a prerequisite to obtaining a government benefit.  Hopper, 91 F.3d at 1266-67.

FCA liability may also be found in the absence of an explicitly false claim under a "promissory fraud" or "fraud-in-the-inducement" theory.  "This theory holds that liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or

1    fraudulent conduct." Id. at 1273.

2        Under either the "false certification" theory or the "promissory fraud" theory, the

3    essential elements of FCA liability are the same – (a) a false statement or fraudulent course

4    of conduct, (b) made with scienter, (c) that was material, causing (d) the government to pay

5    out money or forfeit moneys due.  Hendow, 461 F.3d at 1174.

6    B.    The Service Contract Act

7        The SCA establishes minimum labor standards for service work provided by private

8    businesses to the United States.  Government service contractors must pay a "prevailing

9    wage" to their employees who work on federal contracts ("covered employees"); must

10   contribute a certain amount to pay fringe benefits for covered employees; must provide

11   covered employees a minimum number of paid holidays and vacation days; and must notify

12   their employees of the entitlements they must receive under the SCA.  41 U.S.C.

13   §§ 351(a)(1)-(a)(4), 352(a).

14       The SCA also requires government service contractors to make and maintain, for

15   three years after completion of the covered work, weekly records for each covered

16   employee stating the number of hours worked, the wages paid, and the amount of fringe

17   benefits paid.  29 C.F.R. § 4.6(g)(1).

18       The SCA applies to contracts with the United States or the District of Columbia, in

19   excess of $2,500, "the principal purpose of which is to furnish services in the United States

20   through the use of service employees."  41 U.S.C. § 351(a).  However, the SCA applies

21   only when the required clauses are included in the government contract.

22       When an agency plans to enter into a contract it believes may be covered by the

23   SCA, it must notify the United States Department of Labor ("DOL").  29 C.F.R. § 4.4.  If the

24   DOL determines that the SCA is applicable, it provides the agency with a "wage

25   determination" that must then be incorporated into the contract.  Id.  Thus, unless such a

26   "wage determination" is attached, there are no specified minimum wages that a contractor

27   must pay under the SCA.

28       The regulations also indicate that the SCA is not automatically applicable if a

4

1  contracting agency erroneously fails to include the necessary clauses in a contract or

2  inadvertently neglects to include the necessary wage determination. 29 C.F.R. § 4.5(c)(2).

3  When the DOL becomes aware of such an error, it will order the agency to renegotiate the

4  contract and add the necessary clauses. Id. The DOL has the authority to retroactively

5  apply an applicable wage determination, id., but in that case the regulations require the

6  agency to compensate the contractor by "equitably adjust[ing] the contract price to reflect

7  any changed cost of performance." 48 C.F.R. § 22.1015.

8      The DOL has the sole authority to enforce the SCA, and to determine what

9  constitutes a "prevailing wage." The SCA does not create a private right of action for

10  workers. Miscellaneous Serv. Workers, Drivers & Helpers v. Philco-Ford Corp., 661 F.2d

11  776, 781 (9th Cir. 1981). However, an FCA claim brought against a federal contractor for

12  falsely reporting to the United States that it was in compliance with the SCA is not barred;

13  such a suit is not the equivalent of a suit for SCA damages, as it is based on the

14  contractor's reports to the United States and not on the nonpayment of prevailing wages.

15  U.S. ex rel. Sutton v. Double Day Office Servs., Inc., 121 F.3d 531, 534 (9th Cir. 1997).

16  C.    Factual Allegations

17      UNITE HERE is a labor organization that represents workers in the garment and

18  textile manufacturing, retail garment, laundry, hotel, and food services industries. Cintas is

19  a Cincinnati-based uniform rental and laundry service with 34,000 workers at some 400

20  locations throughout the United States and Canada. Cintas provides uniform rental and

21  other services to numerous customers in North America, including many agencies of the

22  United States government.

23      Since about 2003, UNITE (and since 2004, UNITE HERE) has been attempting to

24  organize the workers at Cintas. Cintas claims that UNITE HERE has engaged in a years-

25  long campaign of litigation and harassment against Cintas, as part of its effort to be

26  recognized as the bargaining agent for Cintas employees.

27      In the present action, UNITE HERE alleges that since 1999, Cintas has entered into

28  "at least" 29 contracts with the United States that are covered by the SCA, including

1  contracts to provide uniform and linen cleaning services for various federal agencies.

2  UNITE HERE asserts that the documents pertaining to those contracts contain express

3  provisions requiring Cintas to comply with the SCA, and that Cintas' agreement to comply

4  with the SCA was a prerequisite to its obtaining the contracts. UNITE HERE also claims

5  that the contracts required Cintas to submit monthly invoices to the United States, and that

6  Cintas was required to certify in those invoices that it was in compliance with the SCA.

7  UNITE HERE claims that Cintas failed to pay prevailing hourly minimum wages and

8  fringe benefits required under the SCA, failed to notify employees of their right to fringe

9  benefits, and failed to maintain the required weekly records as required under the SCA.

10  UNITE HERE alleges that Cintas violated the FCA by falsely certifying that it was in

11  compliance with SCA requirements.

12  **DISCUSSION**

13  A.    Dismissal For Failure to State a Claim

14      1.    Legal Standard

15  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims

16  asserted in the complaint. See Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729,

17  731 (9th Cir. 2001). Rule 12(b)(6) permits dismissal of a claim when the claim lacks a

18  cognizable legal theory or there are insufficient facts alleged to support plaintiff's theory.

19  See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

20  To survive a 12(b)(6) motion for failure to state a claim, plaintiffs must allege

21  "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.

22  Twombly, 127 S.Ct. 1955, 1974 (2007). That is, when all the allegations in the complaint

23  are taken as true and construed in the light most favorable to the plaintiff, there must be

24  sufficient facts pled to raise a right to relief above the speculative level. See id. at 1965. If

25  a complaint is found to fail to state a claim, the court should grant leave to amend unless it

26  determines that the pleading could not possibly be cured by the allegation of other facts.

27  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

28  In addition, as the FCA is an anti-fraud statute, an action brought under the FCA

6

must fulfill the particularity requirements of Federal Rule of Civil Procedure 9(b).  See Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001).  Therefore, a plaintiff in an FCA action must, at a minimum, set forth the "who, when, where and how" as well as the specific content of each alleged act of fraud to allow the defendant to defend against the charge and not just deny that it has done anything wrong.  Id. at 1018-19; see also Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1106 (9th Cir. 2003); Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).  Failure to comply with Rule 9(b) requirements is a ground for dismissal.  Vess, 317 F.3d at 1107.

     2.    Defendant's Motion

Cintas argues that the FAC fails to plead fraud with particularity.  Cintas asserts that the FAC contains vague, conclusory allegations, and fails to identify the contracts upon which plaintiff bases its claims, fails to identify any specific violation of the SCA, and fails to identify a single false claim for payment by Cintas upon which the government relied.

Cintas notes, for example, that while UNITE HERE bases its claims on "at least 29 contracts" that Cintas allegedly entered into with the federal government, UNITE HERE neither quotes the necessary language from those contracts, nor attaches copies of the contracts.  Cintas asserts in addition that UNITE HERE discloses the identity of the contracting agency for only two of the contracts, and fails to specify the dates of the contracts, the amounts at issue in the contracts, or the subject matter of the contracts.

Cintas also argues that the FAC alleges no specific SCA violations, but rather asserts only that the 29 unidentified contracts are "covered by the SCA" because they are for amounts in excess of $2500 and involve the provision of services to the government.  Cintas contends, however, that parties who contract with the government are not automatically or mechanically subject to the SCA – rather, they are subject to the SCA only when the government agency includes certain clauses in service contracts.  Cintas argues that UNITE HERE has identified no specific instances where such language was included in a Cintas contract and Cintas subsequently acted in a manner that violated that language.

Cintas contends that to comply with Rule 9(b), UNITE HERE must allege specific

facts showing that Cintas entered into a service contract with the United States government which contained clauses implementing the SCA; that the DOL determined that the contract was covered by the SCA, and issued a wage determination setting forth prevailing wages; and that Cintas did not comply with the wage determination.

Cintas contends that plaintiff has failed to comply with these requirements. Cintas asserts that as to 27 of the 29 alleged contracts, plaintiff provides no specifics whatsoever about the alleged contracting party or parties. As to the two remaining contracts – the one with the Department of Veterans Affairs (VA) Northern California, and the one with the Bureau of Land Management (BLM) in Idaho – Cintas contends that plaintiff fails to allege that the contract itself required Cintas to comply with the SCA or contained the necessary wage determination.

Cintas also asserts that plaintiff fails to allege the specific circumstances in which Cintas allegedly violated the FCA. Cintas argues that merely alleging violations of federal statutes while receiving funds is insufficient to state a claim under the FCA; and that simply alleging breach of contract or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, does not automatically give rise to a claim under the FCA.

Rather, Cintas asserts, plaintiff must allege with specificity that there was some request for payment containing false statements made with scienter – that is, knowledge of falsity and intent to deceive – and must allege, at a minimum, the time, date, place, and content of such alleged false claim. In other words, according to Cintas, plaintiff must allege when it was that Cintas applied for payment from the government, which individual signed any alleged certification, and how much money Cintas received; and must also allege facts showing that when Cintas submitted the allegedly false claim for payment, it knew that it was required to comply with the SCA and that it had not done so or intended to do so.

Cintas contends that the allegations in the FAC fall short of meeting this standard. Cintas asserts, for example, that plaintiff alleges only that Cintas submitted "falsified

1   compliance documents" and made "fraudulent claims for payment," but never alleges facts

2   showing when or in what context Cintas allegedly submitted these documents and claims.

3   Similarly, Cintas contends that UNITE HERE claims that Cintas received a letter from the

4   BLM regarding a wage determination, but does not allege facts showing how Cintas

5   responded, stating only that it is "informed and believes" that Cintas returned a form.

6        Finally, Cintas asserts that while UNITE HERE claims that Cintas' government

7   contracts required Cintas to "submit invoices to the United States," and vaguely alleges the

8   existence of one such contract – the contract with the VA Medical Center in San Francisco

9   – it refers only to the "documents regarding" the contract (not the contract itself) which

10  allegedly required Cintas to submit "certified invoices," and alleges no facts showing that

11  Cintas was required to certify anything about the SCA to the VA, let alone facts showing

12  that Cintas fraudulently did so.

13       Cintas contends that UNITE HERE generally alleges that the government made

14  payments to Cintas for "each of its service contracts" based on "false representations,

15  assertions and/or certifications" that Cintas would comply and was complying with the SCA,

16  but includes not a single fact about any specific contract, representation, assertion, or

17  certification.

18       Moreover, Cintas argues, even if UNITE HERE had alleged the false or fraudulent

19  statements with particularity, the FCA claim would still fail because UNITE HERE alleges

20  no facts showing that any such claim was "the cause of the [g]overnment's providing the

21  benefit . . . [and that a] relation exists between the subject matter of the false statement and

22  the event triggering [the] Government's loss," as required under Hopper, 91 F.3d at 1266.

23  In short, Cintas contends, there is no showing that Cintas made any false statement that

24  caused the government to pay out money or forfeit moneys due.

25       In opposition, UNITE HERE contends that the requirement under Rule 9(b) that

26  fraud be pled with particularity is relaxed in an FCA case when the alleged fraud was

27  widespread or took place over a span of years.  UNITE HERE claims that when the alleged

28  fraud is widespread, it is sufficient for the plaintiff to simply provide a number of limited

examples of the alleged conduct.

UNITE HERE claims that Rule 9(b)'s particularity requirements are also relaxed where, as here, the evidence of the fraud is within the defendant's exclusive possession. UNITE HERE asserts that it is not the typical FCA plaintiff – an "insider" with personal knowledge of the wrongdoing at issue – and that it therefore cannot be expected to have access to documents from which the scope and method of the alleged fraud can be determined.

Nonetheless, UNITE HERE argues that the allegations in the FAC are more than sufficiently detailed. UNITE HERE asserts that the FAC contains five pages of factual details regarding the time, place, and specific content of the false representations that underlie the FCA claim. UNITE HERE contends that the FAC is sufficiently specific as to time, as it alleges that the scheme took place during the period "from 1999 to the present;" that it is sufficiently specific as to the contracts, as it alleges that Cintas made false representations as to at least 29 contracts, three of which were contracts entered into between Cintas and the BLM in Idaho, the VA Medical Center in San Francisco, and the VA Medical Center in North Carolina; that it is sufficiently specific as to the Cintas plants where the SCA-covered work was performed, as it mentions specific Cintas plants in South San Francisco, California; Sacramento, California; Charlotte, North Carolina; Yakima, Washington; Nampa, Indiana; Maumelle Arkansas; and Landover, Maryland.

UNITE HERE contends that there is no requirement under Rule 9(b) that the complaint cite or attach every contract at issue. UNITE HERE contends that Cintas itself knows what contracts it entered into with the federal government, and should be required to provide the information necessary to refute the assertion that it entered into 29 contracts during the relevant time period. According to UNITE HERE, in a "wide-ranging course of fraud such as that alleged here," Rule 9(b) does not require the "impractically detailed level of evidentiary pleading" that Cintas has asserted is required.

As for Cintas' claim that it was required to comply with the SCA only if certain clauses were set forth in the government contracts, and that the FAC's failure to quote

those clauses with reference to specific contracts renders it subject to dismissal, UNITE HERE asserts that many contract solicitations stated that Cintas had to comply with the SCA and attached the relevant wage determinations.  For example, UNITE HERE refers to the contract with the BLM in Idaho, the solicitation for which allegedly stated that the SCA would apply, and allegedly attached the wage rate determinations.  With regard to the same contract, UNITE HERE asserts further that a government purchasing agent wrote to Cintas in October 2002, stating that the applicable SCA wage determinations had been revised and asking Cintas to review its price structure for a new contract period.  UNITE HERE claims that at this stage of the litigation, it is sufficient to allege a "pattern of conduct" with supporting examples.

UNITE HERE also notes that in addition to the general allegations regarding Cintas' failure to comply with the SCA's requirements, the FAC provides numerous, specific examples of Cintas' "statutory violations" (referring to SCA violations).  UNITE HERE points to the following allegations:

– Cintas paid assemblers at its South San Francisco plant $9.30 per hour from 2003 to 2004, while the applicable SCA wage for assemblers in that locality was $10.33 to $10.65 per hour; and Cintas paid loaders/unloaders in Sacramento, California, between $7.00 to $9.58 per hour during the period 2001-2005, while the applicable SCA wage rate was $8.89 to $11.84 per hour;

– Cintas paid fringe benefits in an amount between $1.37 and $1.53 per hour between 2001 and 2005, while the minimum SCA fringe benefit requirement for that period was $2.02 to $2.07 per hour; and paid less than the SCA-mandated fringe benefits to workers in Sacramento, California, and Charlotte, North Carolina;

– Cintas' nationwide holiday policy failed to comply with the SCA-mandated holidays, as Cintas employees were allegedly required to work on Martin Luther King Jr., Day, on President's Day, on Columbus Day, and/or on Veterans' Day;

– Cintas employees did not receive the SCA-mandated vacation periods, but rather received Cintas' normal vacation, which was less than that mandated under the

11

United States District Court

For the Northern District of California

SCA; and

– Cintas failed to meet the SCA's mandates for keeping records of SCA-covered work performed for the VA Medical Centers in San Francisco, California, and Charlotte, North Carolina.

UNITE HERE contends that these numerous, specific examples of Cintas' non-compliance with the SCA are sufficient to state a claim under the requirements of Rule 9(b).

As for the other elements of the FCA claim – misrepresentation, scienter, and materiality – UNITE HERE argues, first, that all that is required to establish an "implied" false certification for purposes of the FCA is the allegation of a claim for payment when there are also requirements imposed by law with which the contractor did not comply. Nevertheless, UNITE HERE asserts, the FAC goes farther, as it alleges specifically with regard to the VA contract in San Francisco that Cintas was required to submit express certifications of SCA compliance with its invoices in order to receive payment from the government, and also alleges on information and belief that Cintas was required to do the same in all its other contracts with the United States. Thus, plaintiff asserts, the FAC adequately alleges false certification; adding that the fact that the FAC does not allege specific dates and amounts for specific invoices or payments is not fatal, since this information is within Cintas' control.

Second, with regard to scienter, UNITE HERE argues that Rule 9(b) allows plaintiffs alleging fraud to plead scienter in general terms. UNITE HERE contends that it has satisfied that requirement, in asserting that Cintas is a large, sophisticated corporation that frequently contracts with the United States, that "documents relating to" all 29 of the alleged contracts expressly required Cintas to comply with the SCA, that Cintas communicated with contracting agencies regarding its compliance, and that Cintas sought payment from the government despite its failure to comply with SCA requirements.

Finally, with regard to materiality, UNITE HERE argues that the FCA simply requires that the misrepresentation be material to the payment by the United States to the contractor. UNITE HERE asserts that the FAC alleges that Cintas' compliance with the

12

SCA was a material term of the contracts with the government, and was a prerequisite to its receipt of funds from the government pursuant to those contracts; and that this general allegation is supported by specific instances of communication between the United States and Cintas in which the government sought to ensure that Cintas was on notice of the applicable wages, and that Cintas was required to submit certified invoices in order to receive payment. UNITE HERE contends that taken together, all these allegations support the claim that SCA compliance was material to the government's payment for services.

UNITE HERE argues that materiality may be inferred from the SCA itself, as the statute provides that contractors who violate its requirements will, absent unusual circumstances, be barred from further government contracts for three years, and that the contract with respect to which the violation occurred can be cancelled. 41 U.S.C. §§ 352(c), 354(a). UNITE HERE asserts that if SCA compliance were <u>not</u> material to the government's payment for services, the statute would not impose such severe penalties for noncompliance.

The court finds that the motion must be GRANTED. The FAC lacks the specificity required under Rule 9(b), as it does not allege that any specific contract required compliance with the SCA, or that Cintas paid workers less than they were required to be paid under any specific contract and then falsely certified, <u>as to that specific contract</u>, that the workers were paid in accordance with the SCA mandate applicable to that contract. UNITE HERE alleges only in general terms that there were contracts between Cintas and the government, and that Cintas paid the workers less than it was supposed to under some apparently nationwide standard (which is not even applicable to the individual contracts).

Nor, for that matter, has UNITE HERE stated a claim under the FCA for false certification, because the FAC does not allege specific facts showing that Cintas knowingly made any false statement that caused the United States to pay out money or forfeit moneys due. <u>Hendow</u>, 461 F.3d at 1174.

Moreover, as Cintas argues in its reply, UNITE HERE's position contains numerous contradictions. For example, UNITE HERE contends it has conducted a thorough

investigation and is the "original source" of the allegations against Cintas, but at the same time argues that it should not be required to plead with particularity because Cintas has exclusive possession of the information about the contracts and whether it complied with the SCA as to any particular contract.

Cintas cannot respond to the FAC if it does not know which contracts are at issue, and how and when exactly it is alleged to have failed to pay wages and fringe benefits as required under the SCA. Thus, the FAC arguably does not even meet the requirements of Federal Rule of Civil Procedure 8(a). While it is true that the FAC is replete with "facts," the facts that are pled are not sufficient to give Cintas "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atlantic, 127 S.Ct. at 1964-65).

With regard to UNITE HERE's claim that the Rule 9(b) standards should be "relaxed" when the alleged fraud is wide-spread or continues over a period of years, the court is not persuaded that UNITE HERE should be relieved from the requirement of pleading time, place, and manner with particularity – particularly given that UNITE HERE alleges in the FAC that there were approximately 29 contracts at issue, all involving Cintas. UNITE HERE never explains why it was unable to identify the contracts in the FAC, even though it asserts in its opposition that it has obtained copies of all the contracts at issue.

To the extent that the court has reviewed the cases cited by UNITE HERE,[1] they generally indicate that a plaintiff must specifically allege specific examples of fraud to allege a fraudulent scheme, even if every single instance of fraud need not be alleged. Here, however, UNITE HERE fails to plead any facts identifying contract language incorporating the SCA, and fails to allege with specificity any false certifications made by Cintas. Nor does UNITE HERE allege any dates the contracts were signed, or identify any individuals

---

[1] In support of the proposition that it is "well-established" that Rule 9(b)'s particularity requirement is relaxed where the alleged fraud was widespread or occurred over a span of years, UNITE HERE provides a lengthy footnote consisting of numerous string citations. UNITE HERE should be advised that the court does not have the time or the inclination to read the 11 district court cases cited in support of this single legal argument.

at Cintas who submitted a false claim to the government.

As for UNITE HERE's argument that Rule 9(b)'s requirements should be relaxed because the relevant facts are exclusively within Cintas' possession, the cases cited by UNITE HERE generally hold that a plaintiff/relator may plead fraud based on information and belief only if the complaint specifically alleges that the necessary information lies within the defendant's control, and includes a statement of facts upon which the information and belief is based.[2] However, UNITE HERE cannot plausibly argue that any required information is in Cintas' "exclusive" possession – as information regarding government contracts and any alleged false certifications made by Cintas would necessarily be in the possession of the United States government.

The FAC references only two specific contracts – one with the VA San Francisco, and one with the BLM in Idaho. With regard to the VA contract, UNITE HERE does not allege facts showing that it required Cintas to comply with the SCA. With regard to the BLM contract, while UNITE HERE does allege that the contract incorporated the SCA and a DOL-issued wage determination, UNITE HERE never alleges any facts regarding wages or benefits paid at any Cintas plant in Idaho.

The vast majority of UNITE HERE's allegations are claims that Cintas signed unidentified government contracts and that unidentified workers at various plants were not paid the minimum wages and benefits that the SCA requires. UNITE HERE fails to tie those wages and benefits to specific contracts governed by the SCA. As noted above, the FAC attaches liability to the claim for payment, not to the underlying activity related to the alleged violations of the SCA. See Sutton, 121 F.3d at 534. Simply alleging breach of contract or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, does not automatically give rise to a claim under the FCA. Hopper, 91 F.3d at 1265. Here, however, the factual allegations in the present

---

[2] As explained with regard to the previous argument, the court is not inclined to read all 13 cases cited in support of UNITE HERE's assertion that it is "well-established" that Rule 9(b)'s requirements are relaxed where most of the evidence of fraud is within the defendant's exclusive possession.

case are focused almost entirely on the underlying activity – the requirements of the SCA.

Finally, because UNITE HERE fails to allege that Cintas ever signed a specific contract requiring SCA compliance, there is no basis for it to allege that Cintas ever submitted a false certification. It appears that UNITE HERE may be attempting to state a claim under an "implied certification" theory. However, the Ninth Circuit has never adopted this theory,[3] and in fact has held that "[v]iolations of laws, rules, or regulations alone do not create a cause of action under the FCA." Hopper, 91 F.3d at 1265-67. While an allegation of a claim for payment falsely stating compliance with the SCA may state a claim, an allegation of SCA violations alone does not. Sutton, 121 F.3d at 534.

In short, the FAC contains no specific allegations about who at Cintas submitted false certifications to the government, or when, where, or how they did so. UNITE HERE alleges only on "information and belief" that Cintas was required to make SCA certifications, and did make such certifications. However, these allegations are insufficient under Rule 9(b), and their lack of specificity also means that the FAC is devoid of facts showing that the alleged misrepresentations were material.

B.    Dismissal for Lack of Subject Matter Jurisdiction

1.    Legal Standard

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject-matter jurisdiction. See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992). The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Id.

---

[3] It is true that the Ninth Circuit commented in Hendow that where "a party submits a claim for payment under a government program with requirements for participation, that claim is taken as an implied certification that the party was in compliance with those program requirements." Hendow, 461 F.3d at 1172 n.1. However, the Ninth Circuit in Hendow did not base its ruling on an "implied certification" theory, but rather simply pointed out that the theory has been adopted by "other courts," specifically mentioning the Court of Federal Claims.

16

United States District Court

For the Northern District of California

1    Where a motion to dismiss raises questions that go to the court's jurisdiction, the

2 court may resolve factual questions as necessary and appropriate.  Nevertheless, the

3 burden of establishing that a cause lies within this limited jurisdiction rests upon the party

4 asserting jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377

5 (1994).

6        2.    Defendant's Motion

7    Cintas argues that the action should be dismissed for lack of subject matter

8 jurisdiction.  Under 31 U.S.C. § 3730,

9
         [n]o court shall have jurisdiction over an action under this section based upon
10        the public disclosure of allegations or transactions in a criminal, civil, or
         administrative hearing, in a congressional, administrative, or Government
11        Accounting Office report, hearing, audit, or investigation, or from the news
         media, unless the action is brought by the Attorney General or the person
12        bringing the action is an original source of the information.

13 31 U.S.C. § 3730(e)(4)(A).

14    The burden is on UNITE HERE as the relator to establish subject matter jurisdiction.

15 United States ex rel. Harshman v. Alcan Elec. and Eng'g, Inc., 197 F.3d 1014, 1018 (9th

16 Cir. 1999); see also Rockwell Int'l Corp. v. United States, 127 S.Ct. 1397, 1405-06 (2007)

17 (§ 3730(e)(4)(A) is jurisdictional).

18    In order to determine whether there is subject matter jurisdiction over UNITE

19 HERE's claims, the court must first determine whether the information about Cintas' alleged

20 violations of the SCA was publicly disclosed.  A-1 Ambulance Serv., Inc. v. California, 202

21 F.3d 1238, 1243 (9th Cir. 2000).  If so, the court must then determine whether UNITE

22 HERE was an original source of the information.  Id.

23    There are two aspects to "public disclosure."  First, the disclosure must have been

24 through a method specified in § 3730(e)(4)(A) – public disclosure or allegations in a

25 criminal, civil, or administrative hearing; in a [g]overnment report, hearing, audit, or

26 investigation; or from the news media.  Second, the disclosure must have been "public"

27 within the meaning of the statute.  Seal 1 v. Seal A, 255 F.3d 1154, 1159 (9th Cir. 2001).

28 That is, there must have been a prior "public disclosure" of the "allegations and

17

1    transactions" underlying the qui tam suit.  A-1 Ambulance, 202 F.3d at 1243.

2          Here, Cintas contends that the allegations in the FAC – that Cintas entered into

3    contracts with the federal government; that based on the type and amount of those

4    contracts, they should have been covered by the SCA; and that Cintas failed to provide

5    wages and benefits that were required by the SCA – were publicly disclosed because the

6    information is available in the Internet "news media" or in litigation.  Cintas argues that

7    under the two-part test in A-1 Ambulance, these allegations have been publicly disclosed,

8    as the disclosures concerned the same "allegation or transaction" contained in the FAC.

9          Cintas contends that the fact that it enters into contracts with various agencies of the

10   United States government and the type and amount of those contracts are matters known

11   to the government and to any number of interested members of the public with access to

12   the Internet.  As an example, Cintas cites to a website, www.fbodaily.com, which it claims

13   announces a VA contract awarded to Cintas' South San Francisco location.

14         Cintas also argues that the media is full of reports regarding Cintas' alleged

15   underpayment of its workers.  For example, Cintas contends that a lawsuit filed in 2003

16   alleged that Cintas workers in California made less than the City of Hayward's living wage

17   ordinance required during 2003.  Cintas claims that that lawsuit was supported by UNITE

18   HERE and was widely reported in the media, including in a press release that issued by

19   UNITE HERE.  Cintas asserts that UNITE HERE has frequently disseminated to the media

20   similar allegations about wages paid by Cintas, including allegations about at least one of

21   the locations that is vaguely referenced in the FAC.

22         In opposition, UNITE HERE that the "public disclosure" bar is inapplicable.  UNITE

23   HERE claims that the government contracts at issue were not "publicly disclosed" within the

24   meaning of the FCA, because, while the type and amount of the contracts were public

25   information, the disclosure did not occur in a criminal, civil or administrative hearing, or in a

26   congressional, administrative, or GAO report, hearing, audit, or investigation, or in the news

27   media.  UNITE HERE contends that the fact that the public might be able to access

28   information about these contracts via the Internet does not make them "publicly disclosed"

under the FCA.

UNITE HERE notes that in a recent Ninth Circuit case, the court held that materials obtained through a FOIA request are not "publicly disclosed" by virtue of their FOIA availability, and that disclosure occurs only if it is by means of one of the enumerated mechanisms. See United States ex rel. Haight v. Catholic Healthcare West, 445 F.3d 1147, 1153-56 (9th Cir.), cert. denied, 127 S.Ct. 725 (2006). Similarly, UNITE HERE argues, the mere fact that information about the existence of the contracts was publicly available does not mean that they were "publicly disclosed."

UNITE HERE also contends that to the extent the existence of the contracts was publicly disclosed, there is not sufficient nexus between that disclosure and the disclosure of the payment of wages to constitute a "public disclosure" of fraud for purposes of the FCA. UNITE HERE argues that the test is whether an inference of fraud could reasonably have been drawn from the information, and claims that here, there is no connection in any of the disclosures that the wages paid by Cintas were less than Cintas had agreed to pay under the terms of the federal contracts.

The court finds that some, of the allegations have been publicly disclosed, although that question is difficult to answer definitively because of the vagueness of the allegations in the FAC. As an initial matter, the court notes that the "public disclosure" test is not intended to be difficult to meet. Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1476 n.18 (9th Cir. 1996) (courts often treat the "based upon public disclosure" step as a "quick trigger" to arrive at the more exacting "original source" inquiry). Indeed, as the Ninth Circuit has indicated, if the first step of the public disclosure bar is read too narrowly, a relator will be able to evade the stricter "original source" requirements of direct and independent knowledge. Biddle, 161 F.3d at 538-39. The result will be a "flourishing of parasitic suits." Id. at 537.

In order to operate as a jurisdictional bar, the "public disclosure" requirement simply mandates that the prior public disclosures contain enough information to enable the government to pursue an investigation into them. Harshman, 197 F.3d at 1020. The Ninth

19

Circuit has interpreted this requirement to mean that the allegations must be "substantially similar" to those publicly disclosed, and any disclosed transactions must simply disclose the misrepresented state of facts and a true state of facts.  United States ex rel. Foundation Aiding the Elderly v. Horizon West, Inc., 265 F.3d 1011, 1015 (9th Cir. 2001); see also Wang v. FMC Corp., 975 F.2d 1412, 1417 (9th Cir. 1992) (although relator's allegation was supported by a few factual assertions never before publicly disclosed, the allegation nevertheless repeated what the public already knew, and most of the relator's information was "a rehash of what already had been publicly disclosed").

Here, the basic allegations in the FAC are, first, that Cintas entered into contracts with the federal government; second, that those contracts were or should have been governed by the SCA; third, that Cintas failed to provide the wages and benefits mandated under the SCA; and fourth, that Cintas falsely certified to the United States that it had complied with the SCA requirements.

The "fact" of the contracts between Cintas and the federal government was publicly disclosed in the news media, as that information was available on the Internet.  The court does not agree with UNITE HERE that the ruling in Haight – that information disclosed via a FOIA request is not "publicly disclosed" under the statute – applies to information disclosed to the general public via the Internet.

The "fact" that the contracts were governed or should have been governed by the SCA may have been disclosed, though this fact was not adequately pled in the FAC.

The general "fact" that Cintas paid low wages and benefits was disclosed in litigation and was also disclosed by UNITE HERE in the news media, in the sense that UNITE HERE widely publicized its claim that Cintas was underpaying its workers.  It is not clear, however, that this information was disclosed as to all the locations where UNITE HERE claims Cintas operated pursuant to federal contracts.

Finally, the "fact" that Cintas falsely certified that it had complied with the SCA requirements is not pled, as UNITE HERE provides no specifics regarding the contracts that are at issue in this case.

20

If the court finds that the information was "publicly disclosed," its next step is to determine whether the content of the disclosure consisted of the "allegations or transactions" giving rise to the relator's claim, as opposed to mere information.  A-1 Ambulance, 202 F.3d at 1243.

UNITE HERE argues that there was no public disclosure because there is not a close enough nexus between the disclosure of the two separate pieces of information – the government contracts and the allegations about Cintas' payment of wages.  However, the court agrees with Cintas that the allegation that Cintas entered into unspecified government contracts at unspecified times and the allegation that Cintas paid some workers in the United States certain wages are precisely the allegations upon which UNITE HERE based its claims that Cintas violated the SCA and defrauded the government.     However, as the court finds that the FAC must be dismissed for failure plead fraud with particularity, the court cannot simultaneously determine whether the vague allegations underlying those claims have already been publicly disclosed.

If – and only if – the court finds that "allegations or transactions" were in fact publicly disclosed under the statutory requirements, the final step is to determine whether the relator qualifies as an "original source."  Id.  If the action filed by the relator is "based upon" the public disclosure, the court will lack jurisdiction if the relator is not the "original source" of the information.  See Biddle, 161 F.3d at 536-40.

An "original source" is a "person who has direct and independent knowledge of the information upon which the allegations are based and has voluntarily provided the information to the government before filing an action under this section which is based on the information."  31 U.S.C. § 3730(e)(4)(B).

Cintas argues that it is unclear how UNITE HERE – an entity that has thousands of members – can have the "direct and independent knowledge" necessary to be an original source.  Cintas asserts, however, that it cannot address this question until UNITE HERE complies with Rule 9(b) by specifically pleading its allegations, or until discovery reveals which person or persons actually have "direct and independent knowledge" of UNITE

21

HERE's allegations.

In opposition, UNITE HERE asserts that even Cintas agrees that the information in the media regarding Cintas' payment of wages originated with UNITE HERE, and contends that it is therefore an original source as to those facts (which it seems to be conceding have been publicly disclosed).

In addition, at the hearing, UNITE HERE's counsel asserted that UNITE HERE should be considered an original source because it made the connection between separate pieces of information. UNITE HERE contends that it conducted exhaustive interviews and surveys of Cintas workers, reviewed pay records, and investigated to determine whether there were federal contracts that covered the work, and then put all that information together to conclude that fraud had occurred.

The relevant question in the "original source" inquiry is whether UNITE HERE has established that it had "direct and independent knowledge of the information on which the allegation is based," as required under the statute. 31 U.S.C. § 3730(e)(4)(B)). "Direct knowledge" generally means "first-hand knowledge." The court notes that because UNITE HERE is an organization that never worked as an employee at Cintas, its allegations about Cintas' payment of wages are not based on its own observations, but rather on interviews with Cintas employees. Similarly, because UNITE HERE was not involved in the contracting process, it has no direct knowledge regarding whether the contracts at issue required Cintas to comply with the SCA, and whether, in fact, Cintas certified falsely that it had done so.

In addition, the FAC includes numerous allegations made on information and belief. The essence of allegations made on information and belief is that they are not made based on direct, personal knowledge. As Cintas argues, it may well prove impossible for UNITE HERE to establish that it is an original source. Indeed, UNITE HERE argues in its opposition to Cintas' 12(b)(6) motion that it should not be held to Rule 9(b)'s strict pleading requirements because the alleged fraudulent scheme is complex, and relevant information is in Cintas control – an argument that is inconsistent with UNITE HERE's assertion that it

1   is the original source of the information alleged in the FAC.

2        The court finds, however, that the motion must be DENIED.  Because of the lack of

3   specificity in the FAC, it is not possible for the court to determine whether the action meets

4   the jurisdictional requirements set forth in § 3730(e)(4)(A).

5   C.    Cintas' Motion to Strike

6        Cintas also filed a motion to strike the Declaration of Brent Garren, on the ground

7   that it constitutes improper evidence that cannot be considered in the context of Cintas'

8   Rule 12(b)(6) motion, and because it contradicts the allegations in the FAC.  As the court

9   did not consider extraneous evidence in ruling on Cintas' Rule 12(b)(6) motion, and did not

10  grant the Rule 12(b)(1) motion, the motion to strike will be GRANTED on that basis alone.

**CONCLUSION**

12       In accordance with the foregoing, the motion to dismiss the FAC for failure to plead

13  fraud with particularity is GRANTED.  The dismissal is WITH LEAVE TO AMEND.  Any

14  amended complaint shall be filed no later than January 21, 2008.

15       The motion to dismiss for lack of subject matter jurisdiction is DENIED, without

16  prejudice.

17       The motion to strike the Declaration of Brent Garren is GRANTED, as indicated

18  above.

19

20  **IT IS SO ORDERED.**

21  Dated:  December 21, 2007

22                                                  _____
                                                    PHYLLIS J. HAMILTON
23                                                  United States District Judge

24

25

26

27

28