1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                          NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

12   UNITED STATES OF AMERICA,
     ex rel. UNITE HERE,

13
                    Plaintiff,                    No. C 06-2413 PJH

14
            v.                                    **ORDER GRANTING MOTION
15                                                TO DISMISS**
     CINTAS CORPORATION,

16
                    Defendant.
17   _____/

18         Defendant's motion to dismiss the second amended complaint for failure to state a

19   claim and for lack of subject matter jurisdiction came on for hearing before this court on

20   April 9, 2008.  Plaintiff/relator appeared by its counsel Peter D. Nussbaum and Peder J.

21   Thoreen, and defendant appeared by its counsel Gregory M. Utter and Mark Dosker.

22   Having read the parties' papers and carefully considered their arguments and the relevant

23   legal authority, and good cause appearing, the court hereby GRANTS the motion.

24                                    **INTRODUCTION**

25         This is a <u>qui tam</u> action alleging violations of the False Claims Act, 31 U.S.C.

26   §§ 3729, et seq. ("FCA").  Plaintiff/relator UNITE HERE alleges that defendant Cintas

27   Corporation ("Cintas") defrauded the United States by obtaining numerous contracts with

28   the U.S. government under the pretense that Cintas would comply with the requirements of

**United States District Court**
For the Northern District of California

the Service Contract Act of 1965 ("SCA"), 41 U.S.C. §§ 351, et seq., and by falsely certifying that it had so complied. UNITE HERE asserts two causes of action – one under 31 U.S.C. § 3729(a)(1) (presenting false claims for payment or approval), and one under 31 U.S.C. § 3729(a)(2) (knowingly making or using a false record or statement for purposes of obtaining payment by the government on a false or fraudulent claim).

On July 16, 2007, the United States advised the court of its intention to decline intervention. On December 21, 2007, the court granted Cintas' motion to dismiss the first amended complaint ("FAC") for failure to state a claim, with leave to amend. The court found that the FAC failed to allege facts supporting the claim that Cintas knowingly submitted a false claim for payment to the United States. In particular, the court found that UNITE HERE failed to identify the government contracts that were at the center of the allegedly fraudulent scheme, failed to allege with specificity any false certifications made by Cintas, failed to identify individuals at Cintas who submitted a false claim to the government, and failed to allege when, where, or how they did so.

On January 21, 2007, UNITE HERE filed a second amended complaint ("SAC"). Cintas now seeks an order dismissing the SAC for failure to state a claim and lack of subject matter jurisdiction. Cintas asserts that while the SAC does identify specific contracts between Cintas and the government, it does not allege specific violations of either the FCA or the SCA. Cintas also contends that the court lacks subject matter jurisdiction because the SAC does not establish that the information in the contracts was not publicly disclosed or that Cintas is an original source of such information. Cintas seeks dismissal with prejudice.

Because the court finds that the SAC fails to plead fraud with specificity, the motion is GRANTED on that basis. Although the court indicated at the hearing that it was not inclined to find that the public disclosure bar applied, the court now determines that the motion to dismiss for lack of subject matter jurisdiction need not be addressed, as the lack of specificity in the FAC continues to prevent a determination of whether UNITE HERE has met the jurisdictional requirements set forth in the FCA.

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BACKGROUND**

A.     The False Claims Act

The False Claims Act provides for liability for any person who, among other things, "knowingly presents . . . a false or fraudulent claim for payment" to the United States government; "knowingly makes [or] uses . . . a false record or statement" to obtain payment of a false or fraudulent claim by the government; conspires to defraud the government by getting a false or fraudulent claim allowed or paid; or has possession of government property and wilfully delivers less property than the amount for which the person receives a receipt.  31 U.S.C. § 3729(a).

Although the FCA requires the Attorney General to investigate possible violations, id. § 3730(a), a civil action under the FCA may be brought either by the United States or as a qui tam action by a private person.  See id. § 3730(a), (b).  In a qui tam action, the private person – the "relator" – sues on behalf of the government as well as himself.  Id. § 3730(b)(1).  The action must be brought in the name of the government.  Id.  If the government declines to intervene, the relator may conduct the action.  Id. § 3730(b)(4), (c)(3).  If the relator prevails, he receives a percentage of the recovery, with the remainder being paid to the government.  See United States ex rel. Biddle v. Bd of Trustees of Leland Stanford, Jr. University, 161 F.3d 533, 535 (9th Cir. 1998).

In the typical qui tam FCA action, such as where a private company overcharges the United States under a government contract, the claim for payment is literally false or fraudulent.  United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996).  However, Congress has emphasized that the FCA should be broadly construed "to reach all types of fraud . . . that might result in financial loss to the [g]overnment."  United States v. Neifert-White Co., 390 U.S. 228, 232 (1968).

Thus, courts have ruled that the FCA does not limit liability to facially false or fraudulent claims for payment.  Rather, the "broad construction of a 'false or fraudulent claim' [has] given rise to two doctrines that attach potential [FCA] liability to claims for payment that are not explicitly and/or independently false: (1) false certification (either

United States District Court

For the Northern District of California

1  express or implied); and (2) promissory fraud." <u>United States ex rel. Hendow v. Univ. of</u>
2  <u>Phoenix</u>, 461 F.3d 1166, 1171 (9th Cir. 2006).

3       A claim under the FCA can be false "where a party merely certifies compliance with
4  a statute or regulation as a condition to government payment." <u>Id.</u>  The two major
5  considerations in such a case are whether the false statement is the cause of the
6  government's providing the benefit, and whether any relation exists between the subject
7  matter of the false statement and the event triggering the government's loss.  <u>Id.</u>  Mere
8  regulatory or statutory violations do not give rise to an FCA action – rather, it is the false
9  <u>certification</u> of compliance that creates liability when certification is a prerequisite to
10  obtaining a government benefit.  <u>Hopper</u>, 91 F.3d at 1266-67.

11       FCA liability may also be found in the absence of an explicitly false claim under a
12  "promissory fraud" or "fraud-in-the-inducement" theory.  "This theory holds that liability will
13  attach to each claim submitted to the government under a contract, when the contract or
14  extension of government benefit was originally obtained through false statements or
15  fraudulent conduct." <u>Id.</u> at 1273.

16  B.     The Service Contract Act

17       The SCA establishes minimum labor standards for service work provided by private
18  businesses to the United States.  The SCA applies to contracts with the United States or
19  the District of Columbia, in excess of $2,500, "the principal purpose of which is to furnish
20  services in the United States through the use of service employees."  41 U.S.C. § 351(a).

21       Government service contractors must pay a "prevailing wage" to their employees
22  who work on federal contracts ("covered employees"); must contribute a certain amount to
23  pay fringe benefits for covered employees; must provide covered employees a minimum
24  number of paid holidays and vacation days; and must notify their employees of the
25  entitlements they must receive under the SCA.  41 U.S.C. §§ 351(a)(1)-(a)(4), 352(a).

26       The SCA also requires government service contractors to make and maintain, for
27  three years after completion of the covered work, weekly records for each covered
28  employee stating the number of hours worked, the wages paid, and the amount of fringe

United States District Court
For the Northern District of California

benefits paid.  29 C.F.R. § 4.6(g)(1).

When an agency plans to enter into a contract it believes may be covered by the SCA, it must notify the United States Department of Labor ("DOL").  29 C.F.R. § 4.4.  If the DOL determines that the SCA is applicable, it provides the agency with a "wage determination" that must then be incorporated into the contract.  Id.  Thus, unless such a "wage determination" is attached, there are no specified minimum wages that a contractor must pay under the SCA.

The SCA does not confer a private right of action.  The DOL has the sole authority to enforce the SCA, and to determine what constitutes a "prevailing wage."  Miscellaneous Serv. Workers, Drivers & Helpers v. Philco-Ford Corp., 661 F.2d 776, 781 (9th Cir. 1981).  Employees have no standing to enforce their claims against employers for failure to pay SCA-required wages.  Id.  However, the Ninth Circuit has ruled that an insider has standing to bring an FCA against a federal contractor for falsely reporting to the United States that it was in compliance with the SCA, as such a suit is based on the contractor's reports to the United States and is not brought under the SCA for nonpayment of prevailing wages.  U.S. ex rel. Sutton v. Double Day Office Servs., Inc., 121 F.3d 531, 534 (9th Cir. 1997).

C.      Factual Allegations

UNITE HERE is a labor organization that represents workers in the garment and textile manufacturing, retail, gaming, laundry, hotel, and food services industries.  Cintas – based in Cincinnati, Ohio – provides uniform rental, laundry, and other services to customers in North America, including many agencies of the United States government.  Cintas employs approximately 34,000 workers at some 400 locations throughout the United States and Canada.

UNITE HERE claims that Cintas failed to pay prevailing hourly minimum wages and fringe benefits required under the SCA, failed to notify employees of their right to fringe benefits, and failed to maintain the required weekly records as required under the SCA.  UNITE HERE alleges that Cintas violated the FCA by falsely certifying that it was in compliance with SCA requirements.

**United States District Court**
For the Northern District of California

1      UNITE HERE alleges that since 1999, Cintas has entered into numerous SCA-

2  covered contracts with the United States, including contracts to provide uniform and linen

3  cleaning services for various federal agencies.  UNITE HERE lists 33 such contracts in the

4  SAC, and attaches copies of those contracts as exhibits.  See SAC ¶¶ 17, 20-22, 25.

5      UNITE HERE asserts that the documents pertaining to those contracts either

6  expressly incorporate the SCA by reference or incorporate SCA wage determinations,

7  which UNITE HERE submits is an indication that the contracts were covered by the SCA.

8  UNITE HERE alleges on information and belief that the contracts were valid and binding on

9  Cintas, and that Cintas provided SCA-covered services pursuant to each contract and was

10  paid by the United States for those services.  SAC ¶ 20.

11      UNITE HERE also alleges on information and belief that in order to receive payment

12  under these contracts, Cintas had to submit invoices on a monthly (or other periodic) basis;

13  that Cintas did submit such invoices (although UNITE HERE has no copies of the invoices,

14  or any other evidence that invoices were submitted, and no information regarding the

15  contents of any invoices); that the government paid Cintas based on those invoices; and

16  that Cintas failed to comply with its obligations under the SCA (including record-keeping,

17  the payment of wages and benefits, and the notification of SCA rights) with regard to each

18  of these SCA-covered contracts.  SAC ¶¶ 26-29.

19      UNITE HERE further alleges, based on information and belief, that Cintas performed

20  work on two of the government contracts described above at its plants in South San

21  Francisco and Sacramento, SAC ¶¶ 30-40; that Cintas performed work on two of the

22  contracts at its plant at Charlotte, North Carolina, SAC ¶¶ 41-49; that Cintas performed

23  work on four of the contracts at its plant at Yakima, Washington, SAC ¶¶ 50-58; and that

24  Cintas performed work on one contract and a blanket purchase agreement at its plant in

25  Nampa, Idaho, SAC ¶¶ 59-66.

26      At each of these locations, UNITE HERE interviewed workers and alleges on

27  information and belief that Cintas made no effort to separate the work performed on

28  government contracts from the work performed on other contracts; that Cintas does not

United States District Court

For the Northern District of California

1   keep track of the hours its employees spend working on government contracts; that Cintas

2   routinely paid the workers at these locations less than the minimum hourly cash wage

3   required by the SCA; that Cintas failed to pay the fringe benefits required under the SCA.

4   SAC ¶¶ 30-66.[1]

5                                   **DISCUSSION**

6        Cintas argues that the SAC should be dismissed for failure to state a claim because

7   it fails to plead fraud with particularity, and because UNITE HERE is improperly attempting

8   to use the False Claims Act to enforce the SCA.

9        A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

10  legal sufficiency of the claims asserted in the complaint.  See Fed. R. Civ. P. 12(b)(6);

11  Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001).  Rule 12(b)(6) permits dismissal of a

12  claim when the claim lacks a cognizable legal theory or there are insufficient facts alleged

13  to support plaintiff's theory.  See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th

14  Cir. 1990).

15       To survive a 12(b)(6) motion for failure to state a claim, plaintiffs must allege

16  "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v.

17  Twombly, 127 S.Ct. 1955, 1974 (2007).  That is, when all the allegations in the complaint

18  are taken as true and construed in the light most favorable to the plaintiff, there must be

19  sufficient facts pled to raise a right to relief above the speculative level.  See id. at 1965.  If

20  a complaint is found to fail to state a claim, the court should grant leave to amend unless it

21  determines that the pleading could not possibly be cured by the allegation of other facts.

22  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

23       The essential elements of FCA liability are (1) a false statement (or fraudulent

24  course of conduct), (2) made with scienter, (3) that was material, causing (4) the

25  _____

26       [1] At the hearing, counsel for UNITE HERE stated that while UNITE HERE "knows" that
27  government work was done at all locations identified in the contracts attached to the SAC,
    UNITE HERE actually spoke to employees at only two locations – South San Francisco and
28  Charlotte – who stated that they were working on government garments and were not paid
    SCA wages.

United States District Court

For the Northern District of California

1    government to pay out money or forfeit moneys due.  Hendow, 461 F.3d at 1174.  Thus,

2    because it is an anti-fraud statute, an action brought under the FCA must fulfill the

3    particularity requirements of Federal Rule of Civil Procedure Rule 9(b).  Bly-Magee v.

4    California, 236 F.3d 1014, 1018 (9th Cir. 2001).

5         A plaintiff in an FCA action must, at a minimum, plead the "who, when, where and

6    how" as well as the specific content of each alleged act of fraud to allow the defendant to

7    defend against the charge and not just deny that it has done anything wrong.  Id. at 1018-

8    19; see also Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1106 (9th Cir. 2003); Schreiber

9    Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).  Failure to

10   comply with Rule 9(b) requirements is a ground for dismissal.  Vess, 317 F.3d at 1107.

11        Cintas argues that the SAC must be dismissed for failure to plead fraud with

12   particularity.  Cintas asserts that while the SAC pleads more detail than the FAC, it still

13   does not plead specific facts indicating that Cintas submitted a false claim to the

14   government or certified that it had complied with the SCA.  Cintas contends that UNITE

15   HERE never alleges that any specific person at Cintas made false statements to the

16   government, and does not allege when, where, or how the alleged false claims were

17   submitted.  Indeed, Cintas notes, UNITE HERE admits that it does not have this

18   information.

19        Cintas contends that while the UNITE HERE alleges that employees at locations

20   where SCA-covered work was performed were not paid SCA-required prevailing wages,

21   and that Cintas nationwide employee benefits policies provide lower benefits than those

22   required under the SCA, UNITE HERE never alleges that specific workers performed

23   specific work under government contracts that were covered by the SCA and then did not

24   receive the required wages.  Nor, Cintas asserts, does UNITE HERE allege any specific

25   instances where Cintas procured a government payment by falsely representing that it had

26   paid SCA wages or benefits.

27        Cintas asserts that under Rule 9(b), UNITE HERE must specifically allege facts

28   showing that Cintas entered into a government service contract that contained provisions

8

1   implementing the SCA; that the DOL issued a wage determination for that particular

2   contract setting forth prevailing wages; and that Cintas did not comply with that wage

3   determination with regards to work performed under that specific contract.

4       Cintas argues that UNITE HERE's assertion that workers at the plants in South San

5   Francisco, Sacramento, Charlotte, Yakima, and Nampa "recognized" emblems from

6   government agencies, such as the VA is insufficient to state a claim, as UNITE HERE

7   never alleges that those specific workers worked on the specific contracts identified in the

8   SAC, and does not allege the amount of time those specific workers worked on any

9   contract(s), but instead relies solely on allegations about the average wages of only eight

10  Cintas employees over many years.  Similarly, Cintas argues, UNITE HERE claims that

11  Cintas' national benefits program provided employees with fewer benefits than required

12  under the SCA, but fails to tie those allegations to specific employees.

13      In opposition, UNITE HERE contends that Rule 9(b) was not intended to be applied

14  in a "wooden manner," and that it requires less specificity with regard to those elements of

15  the alleged fraudulent activity about which the defendants already has knowledge.  UNITE

16  HERE also asserts that allegations made on information and belief can satisfy Rule 9(b), so

17  long as the basis for the belief is stated, and that this is particularly true where such

18  allegations relate to matters within the defendant's knowledge.

19      UNITE HERE contends that the allegations in the SAC satisfy Rule 9(b), because

20  the SAC contains more than enough information for Cintas to understand UNITE's claim

21  sufficiently in order to draft a responsive pleading.  UNITE HERE claims that the SAC

22  meets each of the required elements.  With regard to "when," UNITE HERE asserts that

23  Cintas' fraud occurred from "at least 1999 to the present."  UNITE HERE claims that when

24  a fraud occurs over many years, alleging a general time frame is sufficient to comply with

25  Rule 9(b).

26      In addition, UNITE HERE asserts that the SAC identifies no fewer than 33 specific

27  contracts between Cintas and federal agencies, and alleges that all of them were covered

28  by the SCA.  UNITE HERE contends that the SAC also identifies specific plants where SCA

United States District Court

For the Northern District of California

1   work covered by those contracts was performed, including South San Francisco and

2   Sacramento, California; Charlotte, North Carolina; Yakima, Washington; and Nampa,

3   Idaho.

4          With regard to Cintas' failure to comply with the SCA, UNITE HERE contends that

5   under SCA regulations, at 29 C.F.R. §§ 4.178, 4.179, where an employer fails to segregate

6   SCA-covered work, the law presumes that every employee in a plant covered by the SCA

7   was performing SCA-covered work during that time period; and that if an employer fails to

8   keep track of hours worked by employees who perform both SCA- and non-SCA-covered

9   work, the law presumes that the employee is entitled to SCA benefits and wages for all

10  work performed in that week.  UNITE HERE argues that the SAC alleges that both these

11  presumptions are applicable in this case.[2]

12         UNITE HERE also contends that the SAC alleges that Cintas' nationwide benefit

13  policies, which apply to every Cintas employee, are on their face non-compliant with with

14  SCA requirements, and that Cintas' argument that UNITE HERE has failed to tie this claim

15  to specific employees is without merit.

16         UNITE HERE asserts that these two facts taken together – the alleged failure to

17  segregate SCA-covered work, and the alleged failure to comply with SCA nationwide

18  benefit policies – are sufficient to establish Cintas' non-compliance with its government

19  contracts.  However, UNITE HERE contends, the SAC goes farther, in that it pleads plant-

20  specific and detailed examples of Cintas' non-compliance with SCA-mandated wages and

21  benefits.  UNITE HERE alleges the specific wages that were paid to workers in specific

22  locations, and claims that those wages were below the required SCA wages, and alleges

23  that Cintas' fringe benefit contributions made on behalf of 10 specific employees at five

24  Cintas plants where SCA work was performed were below SCA-mandated levels.

25         As for Cintas' claim that the SAC fails to plead that Cintas submitted specific

26

27         [2] The regulations in 29 C.F.R. Part 4 are "the Department of Labor's rules relating to the
28  administration of the [SCA]."  29 C.F.R. § 4.1.

1  invoices for payment, UNITE HERE asserts that even though it does not actually possess

2  copies of specific invoices or other requests for payment submitted by Cintas to the

3  government, and has no information regarding the specifics of such requests for payment,

4  it has nonetheless satisfied Rule 9(b) by alleging on information and belief that Cintas

5  submitted such requests for payment on a regular basis.

6      UNITE HERE claims that it is unnecessary for it to allege that specific invoices were

7  submitted for payment on specific work performed on specific contracts, because the only

8  way Cintas could have received payment for the services it provided to the government

9  was to submit invoices to the government.  Thus, UNITE HERE argues, it does not need to

10  actually allege facts indicating that Cintas made claims for payment to the government.

11      As an example, UNITE HERE cites Exhibit 47 to the SAC, a letter notifying Cintas of

12  the government's acceptance of a proposal for the furnishing of flame-retardant uniforms to

13  employees at the Hefner VA Medical Center in Salisbury, NC, which states that "[p]ayment

14  will be made upon receipt of a properly executed invoice."  Cintas also refers to six contract

15  documents attached as exhibits to the SAC – Exhibit 1, which states at page 2 that

16  "Invoices shall be submitted in arrears: Monthly;" Exhibit 4, which states the same at page

17  3; Exhibit 5, which states the same at page 3; Exhibit 6, which states at page 8 under

18  "Contract Terms," that the contractor shall submit an invoice, and includes details of what

19  should be in the invoice (no requirement for SCA certification, however); Exhibit 14 at page

20  11, stating that "[t]he contractor shall invoice at least monthly; and Exhibit 17, at page 5,

21  describing invoicing and payment procedures.

22      Moreover, UNITE HERE, argues, under the "promissory fraud" and "implied

23  certification" theories, all that is required is that Cintas have requested payment at some

24  time, and the specific content of the invoices is irrelevant.  UNITE HERE asserts that at

25  most, the content of the invoices will determine whether Cintas is liable because of

26  express, rather than implied, false certification of compliance with the SCA.

27      UNITE HERE contends that it has properly pled both "promissory fraud" and "implied

28  certification."  UNITE HERE claims that it has pled "promissory fraud," by alleging claims

United States District Court

For the Northern District of California

submitted to the government under a contract, where the contract or extension of government benefits was originally obtained by means of false statements or fraudulent conduct.  UNITE HERE argues that this theory of liability is not contingent on an express or implied certification – all that is required is some claim for payment.  UNITE HERE claims that it is entitled to proceed under a theory of promissory fraud, premised on the false promises by Cintas to comply with the SCA if awarded government contracts.

UNITE HERE also asserts that it has properly pled "implied certification."  UNITE HERE acknowledges that the Ninth Circuit has not yet recognized this theory, but contends that this court <u>should</u> recognize it because five other Circuits have done so.  UNITE HERE argues that implied certification is proper when payment from the United States is expressly conditioned on certain statutory or regulatory requirements, and asserts that here, compliance with the SCA was expressly written into Cintas' contracts as a necessary predicate to obtaining payment for them.  Thus, UNITE HERE argues, it should be permitted to proceed on a theory of implied certification.

Finally, UNITE HERE contends that it has adequately alleged scienter by pleading facts showing reckless disregard for the truth when promising or certifying compliance with the SCA; and that it has adequately alleged materiality, by alleging that Cintas' false promises to comply, or false certifications of compliance, were material to the payment under the contracts.  Indeed, UNITE HERE suggests that all conditions imposed on government contractors are material to the government's payment for services.

Cintas' second major argument in support of its 12(b)(6) motion is that UNITE HERE is improperly attempting to use the FCA to enforce the SCA.  Cintas contends that Congress clearly intended for parties to resolve SCA-related disputes through administrative proceedings governed by the DOL, not through private civil actions.

Cintas argues that the Ninth Circuit's decision in <u>Sutton</u> does not compel a different result, as <u>Sutton</u> involved an insider employee's allegation of false claims regarding SCA compliance.  Cintas asserts that permitting an FCA claim under those circumstances would be beneficial, as it would encourage insider employees who are aware of actual false

United States District Court

For the Northern District of California

1 claims to expose fraud without interfering with the administrative and regulatory scheme

2 that Congress created when it enacted the SCA.  Cintas contends that in the present case,

3 by contrast, UNITE HERE is attempting to pursue FCA claims as part of a corporate

4 campaign, based on nothing more than allegations regarding wages and benefit programs

5 that it finds unsatisfactory.

6      UNITE HERE responds that false claims premised on violations of the SCA are

7 actionable under the FCA, citing <u>Sutton</u> 121 F.3d at 533-34; and <u>United States ex rel.</u>

8 <u>Plumbers & Steamfitters v. C.W. Roen Construction Co.</u>, 183 F.3d 1088, 1092 (9th Cir.

9 1999) (false certification that workers employed on federally-funded construction project

10 were paid at the required Davis-Bacon Act rate may create liability under the FCA).[3]

11      The court finds that Cintas' motion must be GRANTED.  Even as to the contracts for

12 work performed in South San Francisco, Sacramento, Chartotte, Yakima, and Nampa,

13 UNITE HERE has not alleged fraud with particularity as required by Rule 9(b).  UNITE

14 HERE still has not alleged, as to each specific contract, that Cintas submitted a specific

15 false claim to the United States or falsely certified on a specific occasion that it had

16 complied with the SCA with regard to a specific contract.

17      At most, UNITE HERE has simply alleged that Cintas violated the SCA – which does

18 not provide a sufficient basis for an FCA claim.  "Violations of laws, rules, or regulations

19 alone do not create a cause of action under the FCA," as "[i]t is the false <u>certification</u> of

20 compliance which creates liability when certification is a prerequisite to obtaining a

21 government benefit."  <u>Hopper</u>, 91 F.3d at 1266.

22      Nor has UNITE HERE alleged an FCA claim under either a "promissory fraud" or an

23 "implied certification" theory.  Under the "promissory fraud" theory, the plaintiff is still

24 required to allege specific misrepresentations made by the defendant, as it must show that

25 the government contract was "originally obtained through false statements or fraudulent

26 conduct."  <u>Hendow</u>, 461 F.3d at 1173.  Thus, a plaintiff proceeding on a theory of

27 _____

28      [3] <u>Plumbers v. C.W. Roen</u> is not an SCA case, as the contracts at issue were not service contracts, but contracts for work on federally-funded construction.

United States District Court

For the Northern District of California

1  promissory fraud must allege more than that a defendant signed a contract and then failed

2  to comply with the terms of the contract – otherwise, any regulatory violation or breach of

3  contract claim involving a government contractor could give rise to an FCA claim.

4      Moreover, while the court in <u>Hendow</u> indicated that an FCA claim could proceed

5  under a theory of promissory fraud, it did not overrule <u>Hopper</u>, which held that merely

6  alleging a violation of regulations or laws is not sufficient to state a claim under the FCA.

7  UNITE HERE has not alleged facts showing that Cintas made any specific false or

8  fraudulent statement or misrepresentation at the time of contracting, but rather, simply

9  alleges regulatory violations as a breach of contract, which cannot serve as the basis for a

10  promissory fraud theory of recovery.

11      Nor has UNITE HERE alleged facts sufficient to allow it to proceed on an "implied

12  certification" theory, even were that theory accepted by the Ninth Circuit.[4]   UNITE HERE

13  has not alleged a single specific instance when Cintas submitted invoices to the

14  government.  Thus, it has not alleged any specific instance when Cintas impliedly certified

15  compliance with the SCA.  UNITE HERE points to no authority supporting the proposition

16  that under the "implied certification" theory, a plaintiff is excused from alleging the "who,

17  when, where, and how" and the "specific content of each alleged act of fraud."

18      Nor has UNITE HERE sufficiently alleged that payment to Cintas was conditioned on

19  compliance with the SCA.  The SCA requires that certain terms be added to service

20

21      [4]  The court previously recognized that the Ninth Circuit has not adopted an "implied
22  certification" theory as a means of establishing FCA liability.  <u>See</u> December 21, 2007 Order,
      at 16).  In <u>Hendow</u>, the Ninth Circuit explained that

23
              [s]ome courts, such as the Court of Federal Claims, have adopted a version of
24            the false certification theory of liability whereby the certification need only be
              implied, rather than express. In those cases, if a party submits a claim for
25            payment under a government program with requirements for participation, the
              claim itself is taken as an implied certification that the party was in compliance
26            with those program requirements. <u>See</u> Ab-Tech Constr., Inc. v. United States,
              31 Fed.Cl. 429, 434 (Fed. Cl. 1994).

27  <u>Hendow</u>, 461 F.3d at 1172 n.1.  However, the court also found that the issue of implied
28  certification was not before it, as it was undisputed that the case involved an express
      statement of compliance.  <u>Id.</u>

United States District Court

For the Northern District of California

1    contracts.  Violations are investigated not by the government agency making the payment,

2    but by the DOL.  As Cintas notes, if SCA compliance were a condition of payment, then the

3    government would at least in some instances surely have required a certificate of

4    compliance with the SCA.  However, UNITE HERE never alleges that Cintas certified that it

5    had complied with the SCA, and also never alleges a single instance where the

6    government required certification.  Thus, UNITE HERE cannot proceed under an "implied

7    certification" theory.

8         Moreover, as there is no statutory or regulatory requirement that companies that

9    enter into SCA contracts certify that they have complied with the wage and benefits

10   determinations,[5] it is not clear how there can be an "implied certification" that constitutes a

11   "false claim" – even under the broad interpretation of "certification" articulated by the Ninth

12   Circuit.  See Hendow, 461 F.3d at 1172-73.  The Second Circuit in Mikes v. Straus, 274

13   F.3d 687 (2nd Cir. 2001) recognized this anomaly, noting that "implied false certification is

14   appropriately applied only when the underlying statute or regulation upon which the plaintiff

15   relies expressly states the provider must comply in order to be paid."  Id. at 700.[6]

16        In the present case, absent express certification, it appears that any requirement of

17   compliance with SCA wage and benefit determinations would, at most, be a term of the

18   contract.  UNITE HERE suggests that any invoice submitted by a contractor to the

19   government can be considered a certification that the contractor has complied with all the

20   terms of the contract, and that if there is any deviation from the terms of the contract, the

21   contractor has submitted a false claim for FCA purposes.  As Cintas notes, however, that

22

23        [5]  For example, the regulations applicable to service contracts, at 29 C.F.R. Part 4,
24   contain no such requirement.  By contrast, the regulations applicable to federally-funded
     construction projects, which are at 29 C.F.R. Part 5, specifically require that each payroll
25   submitted to the government contain a "Certificate of Compliance" certifying, among other
     things, that the required wage was paid.

26        [6]  The Mikes decision was cited by the Ninth Circuit in Hendow, in analyzing whether
27   the governing law in that case imposed a "condition of participation" or a "condition of
     payment."  See Hendow, 461 F.3d at 1171-72.  However, the Ninth Circuit did not address the
28   question whether there can be an implied certification where there is no requirement for
     certification.

United States District Court
For the Northern District of California

1   would mean that any breach of contract would provide a basis for an FCA action.

2       In addition, UNITE HERE has not alleged a single specific SCA violation.  Rather

3   than alleging that specific employees worked on specific contracts for less than prevailing

4   wages, the SAC alleges only that some employees worked at locations where some work

5   on government contracts was performed.  This claim amounts to a supposition that SCA

6   violations <u>might</u> have occurred, and is not a specific allegation that the SCA was violated.[7]

7       It is true that UNITE HERE has identified Cintas employees at plants where SCA-

8   covered work might have been performed.  However, UNITE HERE provides no details of

9   any specific employee who worked on a specific government contract.  Nor can UNITE

10  HERE rely on general allegations about Cintas' national benefits policy to specifically plead

11  SCA violations, as the SAC fails to identify the specific employees who worked on specific

12  contracts and then allegedly received less than prevailing benefits.

13                          **CONCLUSION**

14      In accordance with the foregoing, the court finds that the motion to dismiss for failure

15  to state a claim must be GRANTED.  Because UNITE HERE has conceded that it is unable

16  to plead specific facts regarding invoices or requests for payment and the alleged false

17  certification, the court finds that granting leave to amend would be futile.

18

19  **IT IS SO ORDERED.**

20  Dated: April 16, 2008

21                                          _____
                                            PHYLLIS J. HAMILTON
22                                          United States District Judge

23      [7] It is not clear that the regulations in 29 C.F.R. Part 4 are applicable here, given that
    there is no private right of action to enforce the SCA. Moreover, 29 C.F.R. § 4.179 applies only
24  to employees who are "performing work on contracts subject to the [SCA]." Because UNITE
    HERE does not allege that specific employees performed specific SCA-covered work, the SAC
25  does not allege facts sufficient for this regulation to apply. Similarly, § 4.185 is not applicable.
    In order to rely on this regulation, UNITE HERE would have to allege facts showing that
26  specific employees, in a specific department of Cintas, worked on a specific government
    contract, during a specific period of performance, and that Cintas never kept track of the
27  amount of work that was being done on that contract. Instead, UNITE HERE simply alleges
    that some employees were not asked to record time for unidentified contracts that they may
28  or may not have worked on.